*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BOCHENEK/CHUBB, Minors.

UNPUBLISHED
November 9, 2023

Nos. 365308; 365309
Wayne Circuit Court
Family Division
LC No. 2021-000840-NA

Before: CAVANAGH, P.J., and RIORDAN and PATEL, JJ.

PER CURIAM.

In Docket No. 365308, respondent-mother[1] appeals as of right the trial court's order terminating her parental rights to her minor children, AB, KB, CC, HC, and MC, under MCL 712A.19b(3)(b)(*ii*) (parent failed to protect child from sexual abuse and there is a reasonable likelihood of future abuse), MCL 712A.19b(3)(g) (failure to provide proper care or custody), and MCL 712A.19b(3)(j) (reasonable likelihood of harm if returned to parent). In Docket No. 365309, respondent-father appeals as of right the trial court's order terminating his parental rights to his minor children, AB and KB, under MCL 712A.19b(3)(b)(*i*) (parent's act caused sexual abuse and the court finds likelihood that child may suffer from injury in the foreseeable future if placed in parent's home), (g), (j), and (k)(*ix*) (sexual abuse of a child). We affirm.

## I. FACTUAL BACKGROUND

On September 20, 2021, petitioner, the Department of Health and Human Services, filed a permanent custody petition requesting that the trial court take jurisdiction over AB, KB, CC, HC, and MC, find a statutory basis for termination of respondent-mother's parental rights under MCL 712A.19b(3)(b)(*ii*), (g), and (j), and for respondent-father's parental rights under MCL 712A.19b(3)(b)(*i*), (g), (j), (k)(*ii*) (parent abused a child or sibling and the abuse included criminal sexual conduct), and (k)(*ix*), and conclude that termination of respondents' respective parental

___

[1] Respondent-mother is the mother to all five children enumerated in the petition, whereas respondent-father is solely the father of AB and KB. The father of CC, HC, and MC is an individual named JC, who passed away on March 15, 2015. JC is not a party to this appeal, nor any other pending appeal.

rights was in the best interests of the children. The petition alleged that (1) Child Protective Services (CPS) received a complaint regarding the sexual abuse of CC by respondent-father, which indicated that respondent-father repeatedly touched CC inappropriately and covered CC's mouth to prevent her from screaming; (2) respondent-mother admitted that respondent-father and CC informed her of the sexual abuse in September 2020, but respondent-mother failed to report the matter to CPS or other authorities because she was financially dependent on respondent-father; and (3) approximately a year later, respondent-father confessed to the police that he sexually abused CC on two different occasions by touching her vagina. Furthermore, the petition alleged, respondents continued their relationship, and respondent-father spent the night at respondent-mother's residence as recently as August 16, 2021. The petition also alleged that respondent-mother's home was largely unsuitable for the children. Following a preliminary hearing, the trial court authorized the petition, and removed the children from respondents' care.

The trial court held a combined adjudicatory and evidentiary hearing on May 19, 2022, and determined, on the basis of respondent-mother's plea of admission, that there were statutory grounds to exercise jurisdiction over AB, KB, CC, HC, and MC, and that there was clear and convincing evidence to support termination of respondent-mother's parental rights under MCL 712A.19b(3)(b)(*ii*), (g), and (j). The court held a second combined adjudicatory and evidentiary hearing on August 12, 2022, after which it exercised jurisdiction over AB and KB with regard to respondent-father, and found that petitioner presented clear and convincing evidence to justify termination of respondent-father's parental rights under MCL 712A.19b(3)(b)(*i*), (g), (j), and (k)(*ix*). The trial court subsequently conducted evidentiary hearings on January 20, 2023, and February 2, 2023, for the best-interests determination, and found that petitioner established, by a preponderance of the evidence, that termination of respondent-mother's parental rights was in the best interests of AB, KB, CC, HC, and MC, and termination of respondent-father's parental rights was in the best interests of AB and KB.

## II. BEST INTERESTS

Respondent-mother argues that the trial court clearly erred when it determined that termination of her parental rights was in the best interests of AB, KB, CC, HC, and MC under MCL 712A.19b(5). Respondent-father argues that the trial court clearly erred when it determined that termination of his parental rights was in the best interests of AB and KB under MCL 712A.19b(5). We disagree as to both respondents.

"Even if the trial court finds that the Department has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). This Court reviews a trial court's best-interests determination for clear error. *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of

parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). In making its determination, the trial court "should weigh all the evidence available to it," and may consider

> the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. Other considerations include the length of time the child was in care, the likelihood that the child could be returned to her parents' home within the foreseeable future, if at all, and compliance with the case service plan. [*In re Atchley*, 341 Mich App 332, 346-347; 990 NW2d 685 (2022) (quotation marks and citations omitted).]

Moreover, "[a] child's placement with relatives is a factor that the trial court is required to consider." *In re Gonzales/Martinez*, 310 Mich App at 434. While placement with a relative weighs against termination, it is not dispositive because a trial court "may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests." *In re Olive/Metts Minors*, 297 Mich App 35, 43; 823 NW2d 144 (2012). In the majority of cases, it is in the child's best interests to be placed with his or her siblings. *Id*. at 42.

The trial court did not clearly err when it determined that termination of respondent mother's parental rights was in the best interests of AB, KB, CC, HC, and MC, and the termination of respondent father's parental rights was in the best interests of AB and KB, under MCL 712A.19b(5). Petitioner presented detailed testimony regarding the sexual abuse and domestic violence occurring in the household while the children were under respondents' care, and respondents' repeated failure to adequately consider the needs of AB, KB, CC, HC, and MC.

With regard to respondent-father, while a respondent's mere inability to personally care for his or her children as a result of incarceration does not alone warrant termination, respondent-father's extensive criminal history, which included numerous convictions for domestic violence, placed AB and KB at a heightened risk of future harm. See *In re Mason*, 486 Mich 142, 165; 782 NW2d 747 (2010) (stating that incarceration alone does not constitute grounds for termination, but a respondent's past violence or criminal history, which indicates that the respondent harmed a child, or created an unreasonable risk of serious abuse or death of a child, may be sufficient for termination purposes).

Throughout respondents' six-year relationship, the children were present for respondents' verbal altercations, which occurred on a weekly basis, in addition to the escalation of physical violence between respondents several times per month. Furthermore, there were numerous allegations throughout the instant proceedings that respondent-father physically assaulted HC and MC, with the children's paternal grandmother asserting that she heard stories regarding, "HC getting Match Box cars thrown in his head. I heard stories with [sic] [respondent-father] would punch him in the head, and say I hate your effin kids. My grandchildren told me that Mom would laugh when that would happen[.]" There purportedly was another incident when respondent-father allegedly pushed MC's head into the wall.

The trial court highlighted that respondent-father was not only incarcerated, but incarcerated because he pleaded guilty to criminal sexual conduct in the second degree due to his

sexual abuse of CC, who was his children's half-sibling. While the evidentiary record clearly states that respondent-father was never purported to have assaulted or acted inappropriately with AB or KB, the foster parent of AB and KB, and a foster care worker, both reported concerning behavior of AB and KB following supervised phone visitations with respondent-father. Moreover, respondent-father was previously convicted of criminal sexual conduct arising out of his inappropriate sexual contact with a minor in 2011, in addition to his three prior domestic violence convictions; all of which featured respondent-mother as the victim, including one incident during which respondent-mother was assaulted while pregnant with KB. The court acknowledged that while AB and KB recognized respondent-father as their parent and were generally happy to see him, the primary matter before the trial court was the best interests of AB and KB and ensuring the children "wake up each day and approach their lives with a measure of confidence." See *In re Moss*, 301 Mich App 76, 87-88; 836 NW2d 182 (2013) (noting that the focus of the best-interests analysis is on the child's rights and interests, not the respondent's rights and interests). The court did not clearly err by determining that it could not justify maintaining respondent-father's parental rights while he was incarcerated for a minimum of five years solely on the possibility that respondent-father may be adequately able to parent AB and KB upon release, despite his myriad past mistakes.

With regard to respondent-mother, there were numerous concerning decisions made by her regarding the wellbeing of her children, which justified the trial court's determination that the termination of her parental rights was in the best interests of AB, KB, CC, HC, and MC. Following the death of the biological father of CC, HC, and MC, respondent-mother left her children in the care of their paternal grandparents for a span of 3½ years while she pursued a relationship with respondent-father, with the knowledge that respondent-father was a registered sex offender. Respondent-mother failed to recognize the risk of presenting an individual with a history of inappropriate sexual conduct with minors to her children.

After respondent-mother reacquired CC, HC, and MC, respondent-mother failed to report the sexual abuse of CC by respondent-father for over a year, and purportedly instructed respondent-father and the children to hide the matter from CPS and the authorities. While respondent-mother asserted that she leased a new residence after respondent-father informed her of the sexual abuse, a CPS investigator testified respondent-mother and the children continued to reside with respondent-father in his home.

We recognize that respondent-mother was the repeated victim of domestic violence by respondent-father, and respondent-mother is not responsible for the physical and verbal abuse she suffered. However, respondent-mother opted to pursue a relationship with respondent-father despite understanding that he was a registered sex offender on the first or second day of meeting him, and remained in a six-year relationship with respondent-father, despite the severe emotional harm and sexual abuse suffered by her children during that relationship. Respondent-mother continued to allow respondent-father to interact with AB, KB, CC, HC, and MC, which resulted in CC, HC, and MC expressing that they felt unsafe with respondent-mother. The relationship between respondent-mother and CC, HC, and MC deteriorated to the point where the aforementioned children did not want to meet with respondent-mother since October 2022, with CC stating that she was only visiting with respondent-mother "to protect the little girls."

Respondent-mother acknowledges that her bond with AB and KB is much more intact than CC, HC, and MC, which is supported by the evidentiary record. However, this Court must acknowledge that "[a] parent's right to control the custody and care of her children is not absolute, as the state has a legitimate interest in protecting the moral, emotional, mental, and physical welfare of the minor and in some circumstances neglectful parents may be separated from their children." *In re Richardson*, 329 Mich App 232, 251; 961 NW2d 499 (2019) (quotation marks and citation omitted). Furthermore, "at the best-interest stage, the child's interest in a normal family home is superior to any interest the parent has." *In re Moss*, 301 Mich App at 89. Respondent-mother repeatedly has failed to adequately parent her children, and while we acknowledge that respondent-mother has advanced in terms of acquiring employment and participating in individual therapy and family counseling, she remains incapable of providing a safe and stable home for AB and KB, in addition to the remaining children.

As the trial court noted in its order, the termination of a respondent's parental rights is not required if the child is placed with relatives, and this factor weighs against termination. However, this fact is not dipositive given that a trial court "may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests." *In re Olive/Metts Minors*, 297 Mich App at 43. In the present case, CC, HC, and MC were the only children in relative placement when the case proceeded to termination because they were living with their paternal grandparents. The evidentiary record demonstrates that it is highly unlikely CC, HC, and MC could be returned to the care of respondent-mother within the foreseeable future, if at all. Moreover, the bond between CC, HC, and MC declined to the point the children no longer wished to see respondent-mother, and CC, HC, and MC had all expressed that they wished to stay with their paternal grandparents, who are willing to adopt the children.

AB, KB, CC, HC, and MC are thriving in their current placements, and despite living separately, the children's foster care workers have made efforts to allow the children to meet on a biweekly basis. The children are in secure, structured, and safe environments, and the respective placements have expressed that they wish to adopt and provide for the long-term wellbeing of the children under their care. Continued reunification efforts, at this point in time, are outweighed by the children's dire need for stability, permanency, and finality. Therefore, the trial court did not clearly err by finding that termination of respondent mother's parental rights was in the best interests of AB, KB, CC, HC, and MC, and the termination of respondent father's parental rights was in the best interests of AB and KB.

## III. CONCLUSION

The trial court did not clearly err by finding that termination of respondents' parental rights was in the children's best interests. We affirm.

/s/ Mark J. Cavanagh
/s/ Michael J. Riordan
/s/ Sima G. Patel